UNITED STATES BANKRUPTCY COURT
DISTRICT OF VERMONT

_____
In re:

    **Kimberly A. Flory,**                                              **Chapter 13 Case**
               **Debtor.**                                                     **# 10-10748**
_____

| | | | |
|---|---|---|---|
| *Appearances:* | Lisa Penpraze, Esq. | Jan Sensenich, Esq. | Rebecca Rice, Esq. |
| | Office of the U.S. Trustee | Chapter 13 Trustee | For the Debtor |
| | Albany, New York | Norwich, Vermont | Rutland, Vermont |

## MEMORANDUM OF DECISION
### GRANTING THE U.S. TRUSTEE'S MOTION FOR CONTEMPT AND FOR DISMISSAL WITH PREJUDICE, AND DENYING THE CHAPTER 13 TRUSTEE'S MOTION AS MOOT

    The U.S. Trustee has filed a motion for contempt and dismissal of this Chapter 13 case with prejudice, and the Chapter 13 trustee has filed a motion for turnover and modification of the Debtor's plan. For the reasons set forth below, the Court grants the U.S. Trustee's motion and denies the Chapter 13 trustee's motion as moot.

### JURISDICTION

    This Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157 and 1334 and declares it to be a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

### PROCEDURAL AND FACTUAL BACKGROUND

    Kimberly A. Flory (the "Debtor") filed the instant chapter 13 case on June 3, 2010, and filed a Chapter 13 plan on June 10, 2010. (Doc. # 6.) On July 23, 2010, the Court entered an order confirming the Debtor's Chapter 13 plan. (Doc. # 15.)

    On April 9, 2011, the Chapter 13 Trustee (the "Trustee") filed a motion seeking an order: 1) directing the Internal Revenue Service (the "IRS") to pay directly to the Trustee any tax refunds due to the Debtor; 2) directing the Vermont Department of Taxes to pay directly to the Trustee any tax refunds due to the Debtor; 3) directing the Debtor to deliver to the Trustee copies of all bank statements from January 1, 2011 to the present, a closing statement from the sale of her real property, and an accounting from the attorneys who handled her mother's probate estate; and 4) modifying the Debtor's plan to require the Debtor to pay all of her tax refunds and additional disposable income into the plan. (Doc. # 27.) The Debtor objected to the Trustee's motion. (Doc. # 29.) On May 5, 2011, the Court entered an order on

stipulation between the Trustee, the IRS, and the Debtor withdrawing the portion of the Trustee's motion seeking an order directing the IRS to pay to the Trustee any tax refunds due to the Debtor, and modifying the request to require only that the Debtor turn over any federal tax refunds to the Trustee. (See Doc. # 31.)

The Court held a hearing on the Trustee's motion on May 10, 2011. At that hearing, the Trustee stated that: 1) the Debtor's counsel confirmed to him by e-mail that morning that she was now in control of the Debtor's 2010 tax refund; 2) the Trustee's most urgent request was to ensure that the 2010 tax refund was secure, which he understood had been accomplished based on the e-mail from the Debtor's counsel; and 3) based upon that understanding, the Trustee was willing to negotiate the other issues in his motion and continue the motion. The Debtor's counsel confirmed at the hearing that the Debtor had turned over to her a check representing the 2010 tax refund, and in reliance upon that representation, the Court approved the agreement between the parties to continue the Trustee's motion to May 17, 2011.

At the May 17th hearing, the Trustee withdrew the portion of his motion seeking an order directing the Vermont Department of Taxes to pay to the Trustee any tax refunds due the Debtor. On June 14, 2011, the Court held a second continued hearing on the Trustee's motion, at which the Trustee indicated that he had received the final two documents he had requested from the Debtor's counsel, and asked that the Court continue the hearing to give him an opportunity to review the produced documents with the U.S. Trustee. The Court held a third continued hearing on the Trustee's motion on July 26, 2011, and, based on the parties' representations at this hearing, the Court entered an interim order on the Trustee's motion on July 29, 2011. (See Doc. # 35.) That interim order included findings that:

a)  as of the petition date, the Debtor was in possession of approximately $10,020.91, which, according to Schedule B, were segregated funds held by the Debtor from the probate estate of the Debtor's mother;

b)  the Debtor had denominated the segregated funds as monies due certain attorneys for services they had rendered in connection with administration of the Debtor's mother's probate estate;

c)  the U.S. Trustee discovered through the Debtor's testimony at a Rule 2004 examination that the Debtor had paid all attorneys' fees in connection with the probate estate pre-petition, and, contrary to Schedule B, the funds the Debtor had in the probate account appeared to be within her unfettered control and thus property of the estate; and

d)  at the July 25, 2011 hearing, the Debtor's counsel represented that the Debtor had actually paid a probate attorney $3,100 post-petition, and approximately $6,900 remained in the probate account.[1]

---

[1] The discrepancy between the Debtor's testimony at the 2004 examination and her counsel's subsequent representation, with

2

(Doc. # 35, pp. 1–2.) Based upon these findings, the Court directed in the interim order, <u>inter alia</u>, that:

1) the Debtor immediately pay over to the Debtor's counsel all funds held in the probate account as of July 25, 2011;

2) by the close of business on July 29, 2011, the Debtor's counsel confirm, in writing or via e-mail, to the Trustee and U.S. Trustee, the receipt of the funds and the amount received, and provide confirmation that the Debtor had turned over all funds in the account by including a printout from the Debtor's bank account showing the balance in the probate account as of July 25, 2011; and

3) the Debtor's counsel hold the funds in her client trust account until further order of this Court.

(Doc. # 35, pp. 2–3.)

Following the issuance of the July 29th interim order, the relief the Trustee was seeking in his motion was reduced to: 1) turnover to the Trustee of the Debtor's 2010 federal tax refund (being held by the Debtor's counsel); 2) turnover to the Trustee of the balance in the Debtor's probate account as of July 25, 2011 (also being held by the Debtor's counsel); and 3) modification of the Debtor's plan to require the Debtor to pay her future tax refunds and additional disposable income into the plan.

On August 9, 2011, the U.S. Trustee filed a motion seeking an order: 1) holding the Debtor in contempt pursuant to 11 U.S.C. § 105(a), 2) dismissing the Debtor's case with prejudice and imposing a one-year bar on future bankruptcy filings by the Debtor pursuant to 11 U.S.C. §§ 1307(c) and 349(a). (Doc. # 38.)[2]

The Court held an evidentiary hearing on the two motions on August 11, 2011, at which only the Debtor testified. The parties filed post-trial memoranda of law and the Court took the matter under advisement as of October 8, 2011. (Doc. ## 43, 44, 51, 54.)

## DISCUSSION

The essence of the U.S. Trustee's motion and briefs is that the Debtor misrepresented the nature of certain funds in her possession on the date of filing, dissipated those assets post-petition, failed to comply with several orders of this Court, and, through these actions, abused the bankruptcy system. (Doc. ## 38, 43, 54.) The Trustee agrees with the salient facts recited by the U.S. Trustee and concurs that these facts constitute cause for dismissal. (Doc. # 44.) However, the Trustee argues that dismissal is not in the best interest of creditors and that plan modification, rather than dismissal, is the appropriate remedy. (Doc. # 44.) The Trustee opines that requiring the Debtor to devote future tax refunds to the plan, in addition to

---

respect to the timing of the Debtor's payment of the probate counsel, the Debtor's testimony at trial and her bank statements introduced into evidence at trial make clear that the Debtor paid the probate attorneys just under $3,200.00 post-petition, in July 2010. (Trial Tr. 9:7–14; Pl.'s Ex. 1., p. 22.)

[2] All statutory citations refer to Title 11 of the United States Code (the "Bankruptcy Code") unless otherwise indicated.

3

all of her disposable income, would be a far better outcome for creditors than allowing the Debtor to have her case dismissed and retain the cash in question. (Doc. # 44.) The U.S. Trustee argues in favor of a punitive response that will underscore that the Debtor's conduct undermined the integrity of the bankruptcy system, whereas the Trustee asks the Court to impose a more restorative remedy that acknowledges that the Debtor failed to comply with the prerequisites for bankruptcy relief and imposes conditions on the Debtor aimed at maximizing the benefit to the Debtor's creditors. The Debtor opposes both motions. (Doc. ## 29, 51.)

**I.   The U.S. Trustee is entitled to an order holding the Debtor in contempt pursuant to § 105(a).**

In seeking to have the Debtor held in contempt, the U.S. Trustee relies on a Bankruptcy Code provision that authorizes this Court to grant equitable relief to enforce its orders, carry out the Bankruptcy Code and prevent abuse of the bankruptcy system.

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a). The applicability and use of § 105(a) is typically left to the bankruptcy court. See Adams v. Zarnel (In re Zarnel), 619 F.3d 156, 172 (2d Cir. 2010) (citing In re Morgan, 182 F.3d 775, 780 (11th Cir. 1999)). On a motion for contempt, the movant must show a "knowing violation of a sufficient, specific and precise order" and "knowledge of the order." In re Damon, 40 B.R. 367, 374 (Bankr. S.D.N.Y. 1984) (collecting cases); see also In re Patterson, 111 B.R. 395, 397 (Bankr. N.D.N.Y. 1989). "Willfulness is not required and intent is irrelevant because of the remedial and coercive nature of civil contempt." Damon, 40 B.R. at 374.

    A.    *The U.S. Trustee is entitled to an order holding the Debtor in contempt of Court based upon the Debtor's violation of the confirmation order entered on July 23, 2010.*

The U.S. Trustee argues that the Debtor violated the confirmation order entered on July 23, 2010, by failing to properly disclose her interest in the probate account. (Doc. # 38, ¶¶ 20, 25; Doc. # 43, pp. 10–11; Doc. # 54, pp. 6–7.) The confirmation order requires that:

> Except for those amounts listed in the schedules, the debtor shall report immediately to the Chapter 13 Trustee any right of the debtor or debtor's spouse to a distribution of funds (other than regular monthly income) or other property which exceeds a value of $2,500. This includes the right to disbursement from any source, including, but not limited to bonuses and inheritances. Any such funds to which the debtor become entitled shall be held by the debtor and not used without the Chapter 13 Trustee's permission, or, if such permission is not obtained, an order of the Bankruptcy Court.

(Doc. # 15, p. 2.) This provision imposed a duty on the Debtor to disclose to the Trustee that the funds in

4

the probate account were no longer subject to a claim by attorneys in the probate estate and prohibited her from spending money in that account without either the permission of the Trustee or a Court order. The Debtor appeared at the hearing held on July 22, 2010, at which the Debtor's plan was confirmed, and affirmed under oath that she understood her obligations in this Chapter 13 case. (See docket entry dated July 22, 2010.) At the August 11, 2011 evidentiary hearing, the Debtor testified that she recalled appearing before the Court when her case was confirmed and that she saw the order confirming her plan. (Trial Tr. 21:25–22:4.) Therefore, the Court finds the confirmation order was sufficient, specific, and precise, and the Debtor had knowledge of her obligations under the confirmation order. See Damon, 40 B.R. at 374.

The Debtor and the U.S. Trustee stipulated to the admission of an order of the probate court regarding the probate estate of the Debtor's mother, as Plaintiff's Exhibit 2. (Trial Tr. 13:8–23.) The probate court order, inter alia, approved the final accounting and closed the Debtor's mother's estate without further proceedings, and was dated May 13, 2010. (Pl.'s Ex. 2.) The Debtor filed her voluntary Chapter 13 petition on June 3, 2010, approximately three weeks after entry of the probate order and closing of the probate estate. (Doc. # 1.)

The Debtor's amended Schedule B, filed on July 21, 2010, represents that her interest in her mother's probate estate had a value of $1.00, and the $9,000.00 balance in the estate was owed to attorneys. (Doc. # 12, p. 3.) However, at the evidentiary hearing, the Debtor testified that she did not need to use any of the remaining $9,000.00 for the probate attorney, and that she understood whatever remained after she paid the probate estate legal fees was her money. (Trial Tr. 24:2–6.) The Debtor testified that, since the probate estate closed in May 2010 and she filed her Chapter 13 petition in June 2010, she was not sure why she would have notified the Trustee that she had the money, since "there would have been no difference." (Trial Tr. 24:7–14.)

The Debtor admitted that her statement on Schedule B that the entire $9,000.00 balance in the probate estate was owed to attorneys was incorrect. (Trial Tr. 25:9–16.)[3] The Debtor further admitted that as of December 31, 2010, the balance in the probate account was in excess of $10,000.00. (Trial Tr. 27:6–19.) The Debtor and the U.S. Trustee stipulated to the admission of the Debtor's bank statements for 2010, as part of Plaintiff's Exhibit 1. (Trial Tr. 13:8–20.) The Debtor's December 2010 bank statement shows an ending balance in the probate account of $10,448.26 as of December 31, 2010. (Pl.'s Ex. 1, p. 51.)

---

[3] As noted above, in footnote 1, the record reflects that the Debtor owed just under $3,200 to probate attorneys on the date she filed her petition and the balance were her funds.

5

Based upon the record in this case, including the Debtor's petition and schedules, the testimony and exhibits at the evidentiary hearing held on August 11, 2011, and the Debtor's failure to further amend her Schedule B or properly disclose her interest in the probate account to the Trustee, the Court finds that the Debtor knowingly violated the confirmation order entered on July 23, 2010. See Damon, 40 B.R. at 374. Accordingly, the Court finds that the U.S. Trustee is entitled to an order holding the Debtor in contempt of Court based upon her violation of the confirmation order, pursuant to § 105(a).

> B. *The May 10, 2011 agreement to turn over the Debtor's 2010 tax refund is not a basis for holding the Debtor in contempt of Court.*

The U.S. Trustee argues that the Debtor should also be held in contempt based upon her violation of the agreement between the Debtor and the Trustee to turn over the Debtor's 2010 tax refund. The U.S. Trustee asserts that the Debtor knowingly violated the agreement when she retained her tax refund for her own use and instead turned over an equivalent sum from her probate account. (Doc. # 38, ¶¶ 19, 23; Doc. # 43, pp. 4, 7–8; Doc. # 54, pp. 3–5.) The agreement between the parties was entered on the record, and approved by the Court, at the hearing held on May 10, 2011. At that hearing, the Trustee stated that the Debtor's counsel confirmed to him by e-mail that she was now in control of the Debtor's 2010 tax refund. The Debtor's counsel confirmed that the Debtor had turned over to her a check representing the 2010 tax refund, and the Court approved the agreement between the parties and, in reliance upon that surrender of the refund, to continue the hearing on the Trustee's motion to May 17, 2011.

The Debtor testified at the August 11, 2011 evidentiary hearing that she could not recall the date on which she became aware that the Trustee was seeking turnover of her 2010 tax refund. (Trial Tr. 21:6–9.) Nonetheless, the Debtor acknowledged that she withdrew $7,684.00 out of her probate account to turn over to the Debtor's counsel as her 2010 tax refund. (Trial Tr. 21:10–22:20.) Therefore, the Court finds that the Debtor had knowledge of and understood the agreement between the parties requiring her to turn over her 2010 tax refund to her attorney. See Damon, 40 B.R. at 374.

The Debtor admitted at the evidentiary hearing that she did not take the $7,684.00 out of the account where the tax refund was deposited, but rather took the funds out of her probate account. (Trial Tr. 21:15–17; Trial Tr. 22:16–20.) Her only explanation for this was that she did not see any difference between her different accounts, and she thought the two accounts were interchangeable and it did not matter from which account she withdrew the funds. (Trial Tr. 21:19–22; Trial Tr. 22:16–20.) However, the Court finds that this testimony is not credible as the Trustee's motion unequivocally sought turnover of both the Debtor's 2010 tax refund and all the funds in the Debtor's probate account. (See Doc. # 27.)

Based upon the record in this case, including the Trustee's motion, the testimony at the evidentiary hearing held on August 11, 2011, and the Debtor's depletion of the probate account and failure to turn

over her 2010 tax refund in the amount of $7,684.00 from the account where the tax refund was deposited, the Court finds that the Debtor knowingly violated the agreement between the Debtor and the Trustee to turn over the Debtor's 2010 tax refund entered on the record at the hearing held on May 10, 2011, which was an interim resolution of the Trustee's motion. See Damon, 40 B.R. at 374.

However, the agreement between the Debtor and the Trustee entered on the record at the May 10, 2011 hearing is an agreement, not an order. Thus, the Debtor's failure to comply with it is not a basis for finding the Debtor in contempt, see Damon, 40 B.R. at 374, and the Court denies the U.S. Trustee's motion for an order holding the Debtor in contempt of Court based upon the May 10th agreement.

> C. *The July 29, 2011 interim order directing the Debtor to turn over all funds in the probate account is not a basis for holding the Debtor in contempt of Court.*

The U.S. Trustee argues that the Debtor violated the July 29, 2011 interim order directing turnover of funds in the probate account by secretly taking funds from the probate account and presenting them to satisfy the requirement, as if they were the funds she received as her 2010 federal tax refund. (Doc. # 38, ¶¶ 13–14, 24; Doc. # 43, pp. 9–10; Doc. # 54, p. 5.) In the interim order entered on July 29, 2011, the Court relied upon the Debtor's counsel's July 26th representation that the Debtor paid the probate attorney $3,100.00 out of the probate account and therefore approximately $6,900.00 remained in it as of that date. (See Doc. # 35.)[4]

The July 29, 2011 order directed the Debtor to turn over to her attorney the funds in the probate account as of July 25, 2011.[5] Although the record does not include the amount in the probate account as of July 25, 2011,[6] by adding the approximately $760.00 probate account balance turned over to the Debtor's counsel and the $7,684.00 previously withdrawn to replace the Debtor's tax refund, the Court is able to determine that there would have been approximately $8,444.00 in the probate account if the funds had not been withdrawn.

Although the Debtor complied with the letter of the interim order by turning over all funds in the probate account as of July 25th, the fact that she had first reduced the balance in the probate account by $7,684.00 and had created the impression that the check she gave to her attorney in that amount was from the tax refund she received, is clearly a violation of the intent of the interim order. There is no doubt the Debtor understood that the Trustee was seeking turnover of both the tax refund and the full amount in the

---

[4] While the interim order states that the hearing was held on July 25, 2011, the hearing was actually held on July 26, 2011. (See docket entry dated July 26, 2011.)

[5] Similarly, the May 10, 2011 agreement between the Debtor and the Trustee was an agreement that the Debtor would turn over to her attorney her 2010 federal tax refund (see § I(B), supra).

[6] The U.S. Trustee attached the pertinent bank statement to her motion, but it was not introduced into evidence at trial.

7

probate account after payment of the probate attorney's fees. However, the June 29th interim order did not specify an amount to be turned over – as the Court issued the order without knowledge of the Debtor's depletion of the account. Since that order was not "sufficient, specific and precise" with respect to the amount of funds the Debtor was to turn over from the probate account, the Debtor's failure to pay over the full amount without deduction of the $7,684.00 does not justify finding the Debtor is in contempt of Court based upon a failure to comply with the interim order. See Damon, 40 B.R. at 374. Accordingly, the Court denies the U.S. Trustee's motion for an order holding the Debtor in contempt of Court on this basis.

**II. The U.S. Trustee has established grounds of entry of an order dismissing the Debtor's case with prejudice and imposing a one-year bar to future bankruptcy filings by the Debtor pursuant to 11 U.S.C. §§ 1307(c) and 349(a).**

Section 1307(c) provides, in relevant part, that "on request of . . . the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause . . .." 11 U.S.C. § 1307(c). Section 349(a) provides, in relevant part, that:

> Unless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title.

11 U.S.C. § 349(a). Section 109(g) provides, in relevant part, that:

> Notwithstanding any other provision of this section, no individual . . . may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if—
>
> (1) the case was dismissed by the court for willful failure of the debtor to abide by orders of the court . . ..

11 U.S.C. § 109(g)(1). The term "willful" is not defined within the Bankruptcy Code, but has been described within the Second Circuit as follows:

> Willful is generally used to describe conduct which is intentional, knowing and voluntary, as opposed to conduct which is accidental or beyond the person's control. A willful failure to do a required act necessitates a showing that the person, with notice of their responsibility, intentionally disregarded it or demonstrated 'plain indifference.'

In re Ellis, 48 B.R. 178, 179 (Bankr. E.D.N.Y. 1985) (citations omitted).

A bankruptcy court may dismiss a case with prejudice, temporarily barring a debtor from filing a new bankruptcy case for a period of time beyond the 180 days provided for in § 109(g). See Casse v. Key Bank Nat'l Ass'n (In re Casse), 198 F.3d 327, 334, n.4, 337–39 (2d Cir. 1999) (concluding that § 109(g) does not impose a temporal limitation upon a bankruptcy court's power under §§ 105(a) and 349(a) to prohibit a bad-faith serial filer from filing petitions for periods of time exceeding 180 days).

8

The U.S. Trustee argues that the Debtor willfully failed to comply with the confirmation order entered on July 23, 2010, the agreement between the Debtor and the Trustee entered on the record at the hearing held on May 10, 2011, and the interim order entered on July 29, 2011, and that this constitutes cause to dismiss the Debtor's case with prejudice and impose a one-year bar on future filings. (Doc. # 38, ¶¶ 30–31; Doc. # 43, pp. 11–13; Doc. # 54, pp. 7–8.)

The Court found above that the U.S. Trustee is entitled to an order holding the Debtor in contempt of Court based upon the Debtor's knowing violation of the confirmation order. The Debtor's bank statement for December 2010 shows a balance in the probate account in the amount of $10,488.26 as of December 31, 2010. (Pl.'s Ex. 1, p. 51.) The Debtor admitted that her statement on Schedule B representing that her interest in her mother's probate estate as having a value of $1.00, and that the balance in the estate was $9,000.00, which was identified as funds owed to probate attorneys, was incorrect. (Trial Tr. 25:9–16.) The Debtor testified that she was not sure why she would have notified the Trustee that she had the money from her mother's probate estate, since "there would have been no difference," as the probate estate closed in May 2010 and she filed her petition in June 2010. (Trial Tr. 24:7–14.) The Debtor further testified that it did not occur to her at any subsequent point when she received her bank statements and saw the money in the probate account that she had erroneously listed the money as being owed to the estate attorneys. (Trial Tr. 25:21–26:6.) The Court does not find the Debtor's testimony to be credible, particularly in light of her subsequent use of the funds from the probate account to replace her 2010 tax refund and her depletion of the probate account down to approximately $760.00. The Court concludes that the Debtor willfully violated the confirmation order entered on July 23, 2010, see Ellis, 48 B.R at 179, and that the Debtor's willful failure to comply with the confirmation order is cause to dismiss the Debtor's case with prejudice and to impose a one-year bar on future filings.

Turning to the agreement between the Debtor and the Trustee (entered on the record at the May 10, 2011 hearing) requiring that the Debtor turn over her 2010 tax refund, the Court has found that the Debtor had knowledge of, and knowingly violated, that agreement. Although the record does not support a finding that the agreement was a "sufficient, specific and precise order" as is required for a finding of contempt, the Debtor's lack of good faith with respect to the tax refund is cause for dismissal.

Regarding the interim order entered on July 29, 2011, directing the Debtor to turn over to the Debtor's counsel the approximately $6,900.00 remaining in the probate account as of July 25, 2011, the Court found above that the Debtor had knowledge of the interim order and nonetheless improperly depleted the funds in the probate account. Although the record is insufficient for the Court to grant the U.S. Trustee's motion for contempt on this ground, the Debtor's depletion of the probate account under

9

the circumstances constitutes bad faith and additional cause for dismissal.

During the pendency of her Chapter 13 case, the Debtor made significant discretionary expenditures that she did not disclose to the Trustee or on her Schedule J, which, in turn, reduced her disposable income and the dividend proposed for unsecured creditors in her Chapter 13 plan. The Debtor testified at the August 11, 2011 evidentiary hearing that on June 14, 2010, approximately two weeks after she filed her bankruptcy petition, she purchased, as a gift, a Bose stereo in twelve monthly installments of $76.69; that on June 25, 2010 and July 16, 2010, she made purchases in the amount of $1,189.93 and $1,189.94 for personal travel; and that she made withdrawals in the amount of $1,000.00 on June 11, 2010 and $3,196.56 on July 9, 2010, which she was unable to explain. (Trial Tr. 17:23–18:1; Trial Tr. 18:6–14; Trial Tr. 18:16–19:24.) The Debtor's confirmed plan provides for plan payments of only $125.00 per month and a dividend to general unsecured creditors of only 13.63%. (See Doc. ## 6, 15.) The Court finds that this evidence also supports a finding of bad faith and cause to dismiss this case with prejudice and to bar the Debtor from filing future bankruptcy cases for one year.

### III. The U.S. Trustee's request to rule on the Trustee's motion first is denied.

The U.S. Trustee requests that the Court rule on the Trustee's and the U.S. Trustee's motions seriatim, reasoning that if the Court granted the Trustee's motion first, then the Debtor's counsel would be required to turn over to the Trustee the Debtor's funds she is holding and the Trustee could administer those funds for the benefit of the creditors prior to the Court dismissing the case, thereby preventing the Debtor from having the benefit of these funds as a sanction for her violation of Court orders. (See Doc. # 43, p. 5.) While the Court understands the U.S. Trustee's desire to enable creditors to receive the funds that were not properly disclosed, that relief is not available. First, under the confirmed plan, there is no requirement for the Debtor to deliver the funds in question to the Trustee, and, even if the Court were to overrule the Debtor's objection and grant both the turnover and modification aspects of the Trustee's motion, the Debtor would be free to dismiss her case voluntarily rather than to comply with the terms of the modified plan, because, as a general rule, a debtor may not be forced to stay in a Chapter 13 case. But see Marrama v. Citizens Bank, 549 U.S. 365 (2007); In re Herrmann, 2011 Bankr. LEXIS 614, *3, 2011 WL 671976, *1 (Bankr. D. Vt. Feb. 17, 2011). Second, the U.S. Trustee has not presented any authority for the position that the Court may require a debtor to fulfill the obligations of a modified plan where the record shows that the Debtor acted in contempt of court and abused the bankruptcy system. Therefore, the request that the Court grant the Trustee's motion before ruling on the U.S. Trustee's motion is denied.

### IV. The Trustee's motion is denied as moot.

Since the Court has granted the U.S. Trustee's motion to dismiss, the Court denies the Trustee's motion as moot. Thus, it will not address the merits of the Trustee's motion or the Debtor's objection.

10

## CONCLUSION

For the reasons set forth above, the Court grants the U.S. Trustee's motion to find the Debtor in contempt, to dismiss this case and to impose a one-year bar on future bankruptcy filings; and denies the Trustee's motion for turnover and modification of the plan as moot.

This memorandum constitutes the Court's findings of fact and conclusions of law.

February 24, 2012  
Burlington, Vermont

_____  
Colleen A. Brown  
United States Bankruptcy Judge